STEVEN G. KALAR
Federal Public Defender
Northern District of California
DAVID RIZK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:   (415) 436-7706
Email:        David_Rizk@fd.org

Counsel for Defendant MARADIAGA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEONIDAS MARADIAGA,<br><br>Defendant. | **Case No.:** CR 19–00653 JD<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE**<br><br>**Court:**  Telephonic/Video<br>**Hearing Date:**  April 15, 2019<br>**Hearing Time:**  10:30 a.m. |

### I.   INTRODUCTION

Leonidas Maradiaga will be before the Court on April 15, 2020 to be sentenced for selling undercover officers two bags of crack cocaine that weighed less than a gram total *gross* (i.e., including packaging).  He was arrested in November 2019 and given a state court date—which he dutifully attended, only to be arrested by the federal government and then detained.  Mr. Maradiaga has never been arrested previously and has been deported once in 2012.  He was forced to leave his university program in Honduras because MS-13 threatened his life and murdered his uncle, with whom he was close.  Mr. Maradiaga has been incarcerated at Santa Rita Jail for over four months, since December 9, 2019.  His Guidelines are 6-12 months; they would have been 0-6 months had he

chosen to satisfy the safety valve requirements, but as a lowly street seller he had no valuable information to share and understandably was terrified he would be targeted if he spoke to the government (which he did not).  At the time of his arrest, he had only been living in Oakland for roughly six months and was struggling to get by collecting cans for recycling on the street.  The time he has already served has adequately deterred Mr. Maradiaga from reoffending and he understands that he must not attempt to return to the United States, even though he has been threatened in Honduras by MS-13.  He respectfully asks that he be sentenced to time served and three years of supervised release.

## II.   SENTENCING GUIDELINES

Mr. Maradiaga stipulates to the Guidelines calculation set forth in the parties' plea agreement, which is as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2D1.1(c)(14): | 12 |
| Acceptance of responsibility, U.S.S.G. § 3E1.1: | -2 |
| **Total Offense Level** | **10** |

Mr. Maradiaga has no prior convictions and thus falls into Criminal History Category I.  The Guidelines sentence for a Total Offense Level of 10 and Criminal History Category I is 6-12 months.

## III.   FACTUAL BACKGROUND[1]

Mr. Maradiaga was born on April 11, 1991 to Rosiebel Murillo and Leonidas Coello.  He remains close to his mother, in particular, and had daily contact with his family up until his arrest. Mr. Maradiaga grew up in the small, rural town of Orica in the Francisco Morazán region of Honduras.  He describes his upbringing as severely impoverished.  To make ends meet, his mother had to work in the city as a domestic worker, leaving Mr. Maradiaga and his two sisters to be raised primarily by his grandparents.  Mr. Maradiaga's father was unfaithful to his mother, and they separated as a result, so his father was not around very much when Mr. Maradiaga was growing up.

Mr. Maradiaga's grandparents worked in agriculture on land they rented from larger landowners and Mr. Maradiaga was often drafted to join them in the fields starting at a young age.

---

[1] Mr. Maradiaga consented to a criminal-history only Presentence Report and provides this brief social history to assist the Court in sentencing.

Mr. Maradiaga, however, loved school. When his mother urged him to quit primary school to join the family working, he steadfastly resisted. Impressively, he learned some basic English, graduated high school, and then went to study marketing technologies at the Universidad Nacional Autónoma de Honduras, the public national university in Honduras.

Unfortunately, while he was happily studying and working in the capital, Tegucigalpa, MS-13 murdered his uncle, Martin, who was a father-like figure to Mr. Maradiaga. According to a local shopkeeper who confided in Mr. Maradiaga, the gang then went around his family's neighborhood asking after Mr. Maradiaga, trying to ascertain where he worked and whether he was in fact related to Martin. The gang threatened him on his Facebook page. First, Mr. Maradiaga moved in with an aunt to try to avoid the gang, but the threats continued, and his family suggested he should leave the country—which he did.

In the United States, Mr. Maradiaga struggled to make ends meet. He had no property or valuables of any kind. For roughly six months, he roamed the streets of San Francisco collecting aluminum cans to recycle for money, earning approximately $50 per day, working six to seven days a week. Mr. Maradiaga has a six-year old son with a former partner, Astrid Mendoza, and up until the time of his arrest he was sending approximately $200 per month to his son and $300 per month to his mother. Unable to afford his rent and other necessities, he made the mistake of agreeing to sell drugs on the street. Mr. Maradiaga does not use drugs himself. He is embarrassed of his mistake and regrets the harm drugs do to the community. He wishes he could safely return to his university studies in Honduras and then work in marketing, but is fearful of MS-13.

### IV.  LEGAL STANDARD

The Court is familiar with the directives of *United States v. Booker,* 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a). The Sentencing Guidelines range is not mandatory and the Court has a duty to exercise judgment and discretion in arriving at an appropriate sentence. Importantly, the Court may not presume the Guidelines range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam). Instead, the Court must consider the Guidelines range, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(1), (a)(4) and (a)(6).

In crafting a sentence that is "sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a), the Court must also consider the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

## V.    ARGUMENT

Several matters warrant the Court's consideration in connection with Mr. Maradiaga's request for a time served sentence:

*First*, the charged offense and Mr. Maradiaga's circumstances counsel in favor of a time served sentence of three months.  This case should never have been prosecuted federally.  The offense was a very small street-level drug sale that did not involve violence, weapons, possession of large quantities of controlled substances, or other aggravating factors.  Mr. Maradiaga has no prior criminal history.  He is not a serious offender or a threat to our community.  Rather, he is a lonely refugee from Honduras whose education and family life was derailed by MS-13 violence.  Federal prosecutions such as this one inappropriately single out impoverished immigrants in our community where the gravity of the crime simply does not warrant the use of federal resources, let alone a multi-month sentence.  Given the circumstances of the offense, additional custodial time is certainly not necessary to mete out sufficient punishment, consistent with the mandate of § 3553(a).

*Second*, deterrence does not justify a longer sentence.  As an initial matter, the available data does not support the conclusion that longer sentences promote general deterrence.[2]  Given the particular the circumstances of this case, the concept of specific deterrence does not make much sense either.  More fundamentally, Mr. Maradiaga, like many immigrants, faces far worse conditions in Honduras—including targeted violence by MS-13, as is the case here.  The dangers and hardships

---

[2] *See, e.g.,* Kelli D. Tomlinson, *An Examination of Deterrence Theory: Where Do We Stand?* FEDERAL PROBATION 80 (3), 33-38 (Dec. 2016) ("Severity of punishment was once thought to deliver the main deterrent effect; the more severe the consequence for law-breaking, the less likely an individual is to commit a crime. However, this assumption has not been supported in the literature.").

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE
*MARADIAGA*, CR 19–00653 JD

4

at home drove him to take the extraordinary and unwelcome steps of fleeing his family and his country, and ultimately to commit the instant crime. Mr. Maradiaga took these steps in order to survive. The deterrent value of a marginally longer sentence, weighed against the desperation felt by immigrants such as Mr. Maradiaga, is doubtful at best. He may well face educational and employment consequences at home in Honduras as a result of this conviction. In any case, the ordeal of his incarceration and near-certain deportation thereafter is more than sufficient to deter him from reoffending or returning to this country.

*Third*, public safety certainly does not mandate a longer sentence. Mr. Maradiaga has never been previously arrested, he is not violent, he is not a leader or organizer, and he does not belong to a gang. Although the government may attempt to justify its misguided campaign of low-level drug prosecutions in the Tenderloin by citing statistics concerning substance abuse and deaths in the area, there is no evidence that prosecuting the lowest level offenders will have any impact on public health and safety. Moreover, its decision to arrest Mr. Maradiaga as he attempted to appear for his state court hearing undermines state judicial proceedings and public safety.

*Fourth*, and finally, Mr. Maradiaga's personal history strongly counsels in favor of a downward variance. Although this Court frequently sees defendants from disadvantaged backgrounds, Mr. Maradiaga has certainly been forced to contend with terrible poverty, violence, and ultimately, bad luck. Mr. Maradiaga is hard-working, ambitious, smart, and deeply values education. If he had had the good fortune to been born in the United States, he would be a well-off and productive member of society. It is also notable that Mr. Maradiaga has maintained strong family ties and financially supports his son and mother, despite his own poverty. Thus, while the instant offense is reprehensible, it is also understandable why Mr. Maradiaga committed the crime out of desperation. Mr. Maradiaga's personal circumstances do not favor imposition of a longer sentence.

\\
\\
\\
\\

## VI. CONCLUSION

For all the reasons set forth above, Mr. Maradiaga respectfully asks that the Court sentence him to time served followed by three years supervised release.

Dated: April 1, 2020

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

/S
DAVID RIZK
Assistant Federal Public Defender