UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEONIDAS MARADIAGA,<br><br>Defendant. | Case No. 19-cr-00653-JD-1<br><br>**ORDER RE DISCOVERY**<br><br>Re: Dkt. No. 49 |

The government filed a timely objection to a discovery order issued by the magistrate judge. Dkt. No. 49. The order is vacated.

**BACKGROUND**

Defendant Maradiaga is a citizen of Honduras and was charged with a violation of 28 U.S.C. § 841(a)(1) and (b)(1)(C). He pleaded guilty to the charge on February 12, 2020. Dkt. No. 17. On April 1, 2020, the government and Maradiaga filed sentencing memorandums agreeing to a term of custody of time served. Dkt. Nos. 20, 21.[1]

On April 2, 2020, Magistrate Judge Kim granted a release from custody pending sentencing under the Bail Reform Act of 1984 ("BRA"), 18 U.S.C. § 3143(a). Dkt. No. 23. Later that day, the U.S. Marshals Service turned Maradiaga over to the custody of Immigration and Customs Enforcement ("ICE"), which transported him to the Yuba County Jail. Dkt. No. 50-1 at 35. The transfer was made pursuant to an immigration detainer lodged by ICE on January 8, 2020. Dkt. No. 27-2. On April 3, 2020, ICE reinstated a removal order entered on October 29, 2012, under which Maradiaga had previously been removed from the United States to Honduras in

---

[1] The Court set sentencing for April 15, 2020. Dkt. No. 17. At the request of Maradiaga's attorney in light of recent events, that date was vacated. Dkt. No. 40.

January 2013.  Dkt. No. 50-1 at 9; *see* 8 U.S.C. § 1231(a)(5).  It is not clear in the record whether he is currently in the United States with government consent.  ICE has detained Maradiaga under the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1231(a)(2).

Maradiaga's lawyer objected to the ICE detention as an end run around the BRA release order, and asked the magistrate judge to allow discovery into how it happened.  Dkt. No. 26.  The magistrate judge issued an order permitting discovery of Maradiaga's "A-file," documents "constituting communications between representatives of the Department of Homeland Security, Immigration and Customs Enforcement ('ICE') and lawyers for the Departments of Justice" regarding Maradiaga's custody status, and documents and recordings of any interrogation of Maradiaga by "any officer of the government after April 1, 2020."  Dkt. No. 29.

## DISCUSSION

The government produced the A-file but objects to any further discovery.  Dkt. No. 49 at 6.  Because the discovery order is not dispositive of a claim or defense in the case, a deferential standard of review applies.  The Court may modify or set aside the order if it is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a); *see also In re DMCA Subpoena*, ___ F. Supp. 3d ___, 2020 WL 999788, at *4-5 (N.D. Cal. 2020).

Even under a deferential review, the discovery order cannot stand.  The government's main point is that criminal detention under the Bail Reform Act and civil detention under the INA are completely separate statutory regimes that operate independently of each other.  Consequently, a defendant can be released under the factors enumerated in the Bail Reform Act and immediately detained under the immigration laws.

The government's position is well taken.  The circuit courts that have spoken most directly on the issue -- the Second, Third, Sixth, Eighth, and District of Columbia Circuits -- have concluded that detention under the BRA and INA are different matters subject to different standards.  In the words of the District of Columbia Circuit, "[d]etention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities." *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019).  As a result, the detention of a

1   criminal defendant on immigration grounds after a judge has granted a release under the BRA
2   "does not infringe on the judiciary's role in criminal proceedings," and does not pose a statutory
3   conflict or a constitutional separation of powers issue.  *Id*. at 552-53.
4   　　　So too for the Second, Third, Sixth, and Eighth Circuits.  *See, e.g.*, *United States v.*
5   *Pacheco-Poo*, 952 F.3d 950, 952 (8th Cir. 2020) ("[T]he BRA does not have any clearly expressed
6   intention to subordinate the INA."); *United States v. Lett*, 944 F.3d 467, 470 (2d Cir. 2019)
7   ("[T]he BRA does not preclude the government from exercising its independent detention
8   authority under the INA."); *United States v. Soriano Nunez*, 928 F.3d 240, 246-47 (3d Cir. 2019)
9   ("[N]othing in the BRA prevents [immigration authorities] from acting pursuant to their lawful
10  duties, which include detaining aliens for removal purposes."); *United States v. Veloz-Alonso*, 910
11  F.3d 266, 270 (6th Cir. 2018) ("To the extent that ICE may fulfill its statutory mandates without
12  impairing [the] purpose of the BRA, there is no statutory conflict and the district court may not
13  enjoin the government's agents.").
14  　　　Our circuit has cited with approval the "separate functions" holding in *Vasquez-Benitez*.
15  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  It applied the holding to
16  conclude that "the 'individualized evaluation' required under the Bail Reform Act does not
17  include consideration of an immigration detainer or the possibility that the defendant, if released
18  from criminal custody, would be held in immigration custody."  *Id*.  Even though the government
19  featured *Diaz-Hernandez* prominently in its motion for review, *see, e.g.*, Dkt. No. 49 at 17,
20  Maradiaga did not discuss it at all.
21  　　　Maradiaga has not presented a good reason for a different outcome here.  He ignored *Diaz-*
22  *Hernandez*, and did not distinguish the other circuit decisions in any meaningful way.  The cases
23  he references stand for the proposition that a detention decision under the BRA cannot be based on
24  the existence of an immigration detainer or the possibility of immigration custody.  *See* Dkt. No.
25  56 at 10-11 (citing *United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015)).  That is not
26  particularly relevant to Maradiaga's argument, and in any event is not what happened here.  The
27  magistrate judge did not impermissibly rely on these immigration factors in making the release
28  decision under the BRA.  The ICE detention did not become an issue until after the BRA

United States District Court
Northern District of California

determination had been completed.  Moreover, these cases arguably cut against Maradiaga because they recognize that the BRA and the immigration laws are separate statutory regimes.

Maradiaga's suggestion that discovery might reveal grounds for dismissing the criminal indictment is also unavailing.  Maradiaga says he was improperly questioned by ICE without assistance of counsel, compelled to sign documents, including a waiver of a hearing, that he did not understand, and was questioned about the contents of a privileged communication from defense counsel.  Dkt. No. 56-1 (Rizk Decl.) ¶¶ 2-7.  He also believes the ICE detention may have increased the possibility of COVID-19 infection.  *Id.*  But even accepting all of these allegations as true for present purposes, they occurred well after he was indicted and pleaded guilty, and so have no apparent relevance to dismissal of the indictment.  *See United States v. Barrera-Moreno*, 951 F.2d 1089, 1092-93 (9th Cir. 1991) (dismissal appropriate only if "the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available," and misconduct caused defendant "substantial prejudice").  Maradiaga has not shown how the recent detention events call the indictment or the prosecution as a whole into question.

To be sure, the INA does not permit detention of Maradiaga "for the sole purpose of ensuring [his] presence for criminal prosecution." *Soriano Nunez*, 928 F.3d at 245; *see also Vasquez-Benitez*, 919 F.3d at 552 (ICE may detain alien "for the permissible purpose of effectuating his removal and not to skirt [the] Court's decision [in] setting the terms of [his] release under the BRA") (internal citation omitted; brackets in original).  Maradiaga is perfectly right to note that our circuit has cautioned, albeit in different circumstances, that the government may not "use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act." Dkt. No. 56 at 10 (quoting *Santos-Flores*, 794 F.3d at 1091).

But the record here does not indicate that the government has trampled on this rule and is detaining Maradiaga for his criminal case.  As a practical matter, there is not much left in the criminal proceedings for which to hold Maradiaga in custody.  The Court accepted Maradiaga's guilty plea, there will not be a trial, and the parties agreed on a proposed custody disposition of

4

time served.  In contrast, the immigration case is active and ongoing.  Maradiaga is an alien who was removed once before from the United States, and is subject to ongoing immigration proceedings.  There is every indication that ICE detained him for this reason, and not for this criminal case.

For Maradiaga's challenges to the conditions of detention at the ICE facility, he may pursue a civil lawsuit or possibly a habeas petition under 28 U.S.C. § 2241.  *See Hernandez v. Sessions*, 872 F.3d 976, 987-88 (9th Cir. 2017); *Soriano Nunez*, 928 F.3d at 245 n.7.  Discovery in this criminal case is not the proper channel.

The only remaining issue is the professional conduct of the government's attorneys.  The record indicates that the magistrate judge had concerns about the candor and truthfulness of the lawyers during the detention proceedings.  Without a doubt, the magistrate judge is entitled to pursue those concerns to her satisfaction, and to direct the government to provide her with the information required for that.  It may also be appropriate for a referral, in the magistrate judge's discretion, to the District's Professional Conduct Committee for investigation.  But the discovery order as it currently stands is not suited to those purposes.

**IT IS SO ORDERED.**

Dated:  May 14, 2020

JAMES DONATO
United States District Judge